**KENSEY NASH CORPORATION and St. Jude Medical, Inc., Plaintiffs/Counterclaim Defendants–Appellants,**

and

**Sherwood Medical Company, Plaintiff/Counterclaim Defendant–Appellant,**

and

**Tyco International (U.S.) Inc. (doing business as The Kendall Company), Counterclaim Defendant,**

v.

**PERCLOSE, INC., Defendant–Counterclaimant–Appellee.**

No. 02–1149.

United States Court of Appeals, Federal Circuit.

Feb. 5, 2003.

Before RADER, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

RADER, Circuit Judge.

The United States District Court for the Eastern District of Pennsylvania construed three disputed claim terms from Kensey Nash Corp.'s U.S. Pat. Nos. 5,676,689 ('689 patent) and 5,861,004 ('004 patent). Based on the construction of two of those claim terms, namely "closure device" and "puncture closure," Kensey, St. Jude Medical, Inc., and Sherwood Medical Co. (collectively appellants) stipulated that the accused devices did not infringe the '689 or the '004 patent. Appellants contest the construction of all three disputed claim terms. Because the district court properly construed "closure device" and "puncture closure,"

this court *affirms* the holding of noninfringement of the '689 and '004 patents.

## DISCUSSION

This court reviews claim construction without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1173 (Fed.Cir.1998).

The district court construed "closure device," as recited in the '689 patent, to require that the device use "an anchor, plug, and filament bound together in a pulley like arrangement whereby the filament draws the anchor and plug together so as to effectuate a seal." *Kensey Nash Corp. v. Perclose, Inc.*, No. 98–1629, 2000 WL 1868391 (E.D.Pa. Dec.22, 2000). Thus, the court restricted the meaning of closure device to a device using an anchor-plug-filament (A–P–F) setup.

The specification of the '689 patent supports the district court's construction of "closure device." The specification repeatedly refers to the "closure device" as having an anchor, a seal (i.e., plug), and a filament. For example, in the background section, the specification refers to an earlier Kensey patent as having a closure device. It then states: "The closure device comprises three components, namely, an anchor member, a sealing member, and a filament, e.g., suture." '689 patent, col. 1, ll. 45–47. While the background section normally refers to the prior art and not the claimed invention, here Kensey ascribes a definition to "closure device" in the background section and never alters that definition throughout the specification—even when using that term in reference to the invention of the '689 patent.

Moreover, the prosecution history limited "closure device" to an A–P–F device. Original claim 1 of U.S. Pat. No. 5,441,517 ('517 patent), the great-grandparent of the '689 patent, recited a "closure device" without reciting an anchor, seal, or fila-

ment. In a Rule 131 declaration filed during prosecution of the '517 patent, however, Kensey stated:

> The claimed invention of this application is a closure device....

> The broadest claims of this application call for the closure comprising a sealing portion arranged to be located outside of the interior of a blood vessel and an anchor portion to be located inside of the interior of the blood vessel. The detailed dependent claims call for among other things, the anchor portion including at least one chamber in which a radiopaque material is located.

Thus, even though claim 1 (the only independent claim of the '517 patent) refers only to a "closure device," Kensey represented to the examiner that the closure device had a seal on the outside and an anchor on the inside of the blood vessel. Relying on the doctrine of claim differentiation, Kensey argues that this representation is not limiting because dependent claims 2 and 4 add the anchor, seal, and filament as additional limitations. The doctrine of claim differentiation, however, is a guide only and does not trump a clear and express limiting reference made during prosecution.

Further, other portions of the prosecution history demonstrate that "closure device" is limited to an A–P–F device. During prosecution of the '689 patent, Kensey attempted to get a dependent claim directed to a suture type closure device (i.e., one using filament without an anchor and plug). The examiner rejected the claim on the basis that no such arrangement was shown or described in the specification. In other words, Kensey failed to obtain even a dependent claim from the United States Patent and Trademark Office that would cover a suture type closure device. Nevertheless, appellant's asserted claim construction before this court attempts to recapture the very scope rejected by the examiner.

The district court also relied on a double patenting rejection made during prosecution of the '689 patent to support its holding that "closure device" is limited to an A–P–F device. The '689 patent claims priority to U.S. Patent No. 5,222,974 ('974 patent). The examiner rejected original claims 1–50 of the '689 patent as amounting to double patenting over claim 8 of the '974 patent. Claim 8 included language expressly limiting the closure to an A–P–F device. The examiner found that claim 8 would cover the invention in the pending claims, and likewise, that if allowed, the pending claims would cover claim 8. Kensey argues that this rejection is based on the fact the pending claims were broader than claim 8 of the '974 patent (i.e., genus claims for earlier species claim)—rather than a finding that both claims covered an A–P–F device. Based on the examiner's rejection, however, it is clear that the examiner viewed the "closure device" of the pending claims as an A–P–F device.

This court has considered all of Kensey's arguments, but finds them unpersuasive given the clear limitation of "closure device" in the specification and prosecution history of the '689 patent. In this case, Kensey clearly ascribed a narrower meaning to "closure device" as being an A–P–F device, and it cannot escape that definition now. Thus, the district court's construction of "closure device" is correct.

Kensey also appeals the construction of "puncture closure" as recited in the claims of the '004 patent. The district court held that "puncture closure' referred to

> closure devices (1) that use an anchor, plug, and filament bound together in a pulley like arrangement whereby the filament draws the anchor and plug together so as to effectuate a seal and (2)

that have a filament knot which holds the closure in place by holding the plug in place.

Thus, the court held that "puncture closure" is the same as "closure device" (i.e., an A–P–F device) but with an added element: a filament lock. The court based its construction on its belief that "puncture closure" refers to the same devices as identified for "closure device" in the '689 patent. The district court then added the filament lock requirement based on other language in the claims of the '004 patent. The '004 patent is a continuation of the '689 patent. Because a continuation cannot add new material, the usage of "puncture closure" must accord with the teachings of the '689 patent. Other than in the invention title, the term "puncture closure" appears only once in the specification of the '689 patent. That instance refers to a "hemostatic puncture closure device," indicating that the specification treats "puncture closure" and "closure device" as interchangeable terms. '689 patent, col. 14, l. 41. The '004 patent continues to refer to "closure device 22" throughout the specification in a manner that equates that term with "puncture closure." Similarly, in the '004 patent, the term "puncture closure" appears only in the claims, the summary of the invention, and in one reference to "hemostatic *puncture closure device.*" '004 patent, col. 14, l. 48 (emphasis added). Hence, the district court correctly construed "puncture closure" as an A–P–F closure device with a filament lock.

Appellants stipulated to noninfringement on the basis of the district court's construction of only "closure device" and "puncture closure." Because this court affirms the district court's construction of both of these terms, this court declines to consider the construction of the third disputed claim term.